UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                          Civil No. 05-94 (JRT/FLN)

       Plaintiffs,

      v.                                          **REPORT AND**
**RECOMMENDATION**

01- ANTHONY HEPPNER

02- THOMAS ANDERSON,

       Defendants.
_____

Francis Magill, Jr., Assistant United States Attorney, for the Government
Dean Grau, Esq.,for Defendant Heppner.
Thomas G. Dunnwald, Esq., for Defendant Anderson
_____

    **THIS MATTER** came before the undersigned United States Magistrate Judge on January

11, 2006, on Defendants' Joint Motion for a Kastigar Hearing [#80].  The matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For

the reasons which follow, this Court recommends Defendants' Joint Motion for a Kastigar Hearing

[#80] be denied.

## I.    BACKGROUND

    Defendants Anthony Heppner and Thomas Anderson were charged by indictment on March

22, 2005, with twenty Counts of Mail Fraud in violation of Title 18 U.S.C. §§ 2 and 1341.  (See

Indictment [#1]).  The Indictment alleges that Defendants formed an investment club called Skyward

Group and solicited individuals to become members and investors.  It alleges that from January 1999

until February 2001, Defendants aided and abetted each other to devise a scheme to defraud and

obtain money and property by means of materially false and fraudulent representations, and that

Defendants knowingly caused to be sent and delivered by the United States Postal Service mail for the purpose of executing such a scheme.  The Court held a hearing on September 28, 2005, on Defendants' Joint Motion to Dismiss the Indictment [#54].  During that hearing the Court received testimony from Defendant Anderson, Mrs. Anderson, Defendant Heppner, and Postal Inspector Mary Agnew.

**A.      Court Testimony on September 28, 2005.**

**1.      Defendant Anderson**

Defendant Anderson testified at the hearing before the Court on September 28, 2005.  He stated that sometime during the summer, federal agents attempted to serve him and his wife, at their residence in Eau Claire, Wisconsin, with subpoenas to testify before the Grand Jury in Minneapolis and to produce handwriting exemplars.  Defendant refused to accept service and the agents left the subpoenas on the garage floor.  Later that week, FBI Agent Rice called Defendant to inquire whether he received the subpoenas.  He told her that he never received the subpoenas "because the dog ate them."  Agent Rice stated she would fax a copy of the subpoena to Defendant.

Defendant testified that on July 20, 2005, he and his wife traveled to Minneapolis in response to the subpoena.  They reported to the United States Attorney's Office and met with Postal Inspector Mary Agnew.  He stated that he told the receptionist and Agnew that they had brought the requested documents, which were Skyward Group membership records.  He stated that they requested to produce the documents to the Grand Jury but Agnew told them the Jury did not need to see them.  He stated he took the documents back to his house and kept them there.

Defendant Anderson testified that he was indicted for actions arising from his involvement with Skyward Group.  He stated that at the time the search warrant was executed, on August 24,

2005, he and Defendant Heppner had an appointment to meet with their attorneys on August 26, 2005, to discuss their defense.  In preparation for that meeting, Defendant Anderson's attorney had told him to collate the documents he believed relevant to the defense.  He stated that at the time the warrant was executed, he had been in the process of preparing the documents seized at the request of his attorney.  While the warrant was being executed, Defendant Anderson called his attorney, who advised him to tell the Agents that the documents being seized were privileged under the attorney work product doctrine.  He stated that he told the Agents executing the search that the documents were privileged.  He stated that many of the records seized had been in his house since 1999.

### 2.      Mrs. Anderson

Defendant's wife testified that she and her husband came to Minneapolis in July in compliance with the subpoena.  She stated that they brought all requested documents, about five or six boxes, with them that day.  She stated that she and Mr. Anderson told the receptionist and Inspector Agnew that they wanted to show the documents to the Grand Jury.

### 3.      Postal Inspector Mary Agnew

Mary Agnew testified on September 28, 2005.  She stated that she has been a Postal Inspector for approximately two years and that she and FBI Agent Ruth Hovey were the two Case Agents on Defendants' case.  On June 20, 2004, Agnew attempted to serve the Andersons with the subpoenas to appear before the Grand Jury.  (See Govt. Ex. 1-3, Subpoenas, Docket No. 73.)  The subpoenas requested Defendant Anderson to produce documents referring or relating to Skyward Group, Threshold Benefits Club, and Invest Sonora.  (See Govt. Ex. 1, Subpoena, Docket No. 73.)

Agnew stated that she met with the Andersons in the United States Attorney's Office on July

20, 2004.  She testified that there was no discussion regarding records and that she believed Defendant would not produce records because he was asserting a Fifth Amendment privilege against production.

Agnew stated that she was the Affiant on the search warrant for Defendant Anderson's residence.  Based on information she received from a "confidential source" (CS), she applied for and obtained the search warrant from the United States District Court in the Western District of Wisconsin on August 23, 2005, and executed the warrant on August 24.  (See Govt. Ex. 4, Search Warrant, Docket No. 73.)  She stated that at the time she secured the warrant, she knew Defendants were represented.  She arranged for a "taint reviewer," Postal Inspector Gloria Faust, to review any confidential or privileged documents during the execution of the search warrant to determine whether the document should be seized, and if so, to ensure that the document was segregated from the non-privileged documents seized.  She admitted that Faust received no instruction on how to determine whether a document was privileged or not.

She stated that during the execution, Agents recovered documents from Defendant Anderson's basement, garage, bedrooms and home offices.  The Court viewed video of Defendant Anderson's house taken during the search.  (See Govt. Ex. 5, Video, Docket No. 73.)  Agnew testified that Skyward records were found interspersed within irrelevant documents throughout Defendant's house.  She stated that in total, the Agents seized fifteen boxes of documents.  (See Govt. Exs. 7-21, Docket No. 73.)  She stated that one box contained the documents Faust segregated because of the possibility that they could be privileged.

Agent Agnew testified that after the Agents had completed the search, Defendant Anderson told the Agents that the documents were attorney-client records that were to be used at a meeting

4

with his attorney.  Agnew stated that the seized documents she reviewed were not communications between Defendant Anderson and his attorney, and that she did not believe the documents were privileged.  Instead, the documents were Skyward Group records dating from the 1990's.

### 4.    Defendant Anthony Heppner

Defendant Heppner testified that he was a member of Skyward Group management and that Defendant Anderson is the custodian of Skyward Group records.  He stated that the Government had previously subpoenaed documents while he was represented by an attorney.  His attorney at the time asserted the Fifth Amendment privilege against production.[1]

After receiving the above testimony, the Court took Defendants' Joint Motion to Dismiss the Indictment under advisement.

## B.    The Denial of Defendants' Joint Motion to Dismiss and the Appeal of the Report and Recommendation.

On October 13, 2005, the Court issued a report and recommendation recommending that Defendants' Joint Motion to Dismiss be denied [#71 and #72].  The Court began its analysis by assuming, without deciding, that a Sixth Amendment violation did occur when the search warrant was executed in the present case.  (October 13, 2005,  Report and Recommendation (hereinafter "Report and Recommendation") at 6-9.)  Continuing from this assumption, the Court concluded that Defendants were not entitled to dismissal of the charges against them because they failed to demonstrate how they were prejudiced by the execution of the search warrant.  (Report and Recommendation at 10.)   The Court held that, in the face of a Sixth Amendment violation, the

---

[1]

The Court made no factual findings whether Defendant Anderson presented the requested documents at the July meeting with Inspector Agnew.  The Government construed Defendant Anderson's refusal to accept service of the Subpoena and his statements to Agent Rice to be an assertion of the Fifth Amendment privilege against production.  Nevertheless, the Government never took steps to compel production.

Defendants were not entitled to dismissal of the indictment if a less drastic remedy was available. (Report and Recommendation at 11.)  The Court found that Defendants failed to demonstrate how they were prejudiced by the Sixth Amendment violation that they alleged occurred as a result of the execution of the search warrant.  (Report and Recommendation at 11.)  The Court concluded that a less drastic order could alleviate any prejudice that Defendants experienced as a result of the execution of the search warrant and the seizure of their documents so near in time to their trial. (Report and Recommendation at 11.)  The Court ordered that the Government return the documents to Defendants that were segregated as potentially privileged without the Government's inspection. (Report and Recommendation at 11.)  The Court further ordered that the Government make photocopies, at its own expense, of all the remaining documents and turn over said photocopies to Defendants, so that they could continue to prepare their trial defense.  (Report and Recommendation at 11.)

    Defendants' objected to the Report and Recommendation on October 31, 2005. (See Docket No. 74.)  United States District Court Judge Tunheim issued an order adopting the Report and Recommendation on November 23, 2005.  (See Docket No. 79.)  In that Order the Court reiterated the principle that, where a Sixth Amendment violation occurs, a defendant is not entitled to a dismissal of the indictment if a less drastic remedy can eliminate any potential prejudice.  (Order of Judge Tunheim at 7.)  The Court concluded that, while the seizure of the documents pursuant to the search warrant, so close in time to the trial date, "clearly implicates defendants' Sixth Amendment rights" the remedy proposed by the Magistrate Judge alleviated any potential prejudice. (Order of Judge Tunheim at 8.)  The Court further noted that "if, after having reviewed the copies of the non- 'potentially privileged' documents, defendants believe that the prosecution has retained

documents that are covered by the attorney-client or work-product privileges, the Court will permit defendants to bring a motion regarding such documents at that time, as necessary." (Order of Judge Tunheim at 8.)

After the Report and Recommendation was adopted by Judge Tunheim, Defendants filed the instant Motion for a Kastigar Hearing on November 30, 2005.

## II.   Legal Analysis

In <u>Kastigar v. United States</u>, 406 U.S. 441, 459-60 (1972), the Supreme Court held that use and derivative use immunity are coextensive with the Fifth Amendment privilege against self incrimination, and hence that a defendant who is granted use and derivative use immunity cannot invoke the Fifth Amendment to prevent the Government from compelling his or her testimony.  The Supreme Court further held that, where the Government grants use and derivative use immunity to a witness and thereby forces the witness to testify about matters that may incriminate the witness, and thereafter the Government prosecutes the witness, the "burden of proof . . . is not limited to the negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony."  <u>Id</u>. at 460.  The Supreme Court noted that a witness raising a claim under 18 U.S.C. section 6002, the immunity statute at issue in <u>Kastigar</u>, "need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources."  <u>Id</u>. at 461-62.

Flowing from the decision in <u>Kastigar</u>, a <u>Kastigar</u> hearing is typically undertaken where a defendant was granted use and derivative use immunity and later asserts that his immunized testimony was used against him by the Government.  As noted above, where the witness shows that

he testified under a grant of immunity, the "heavy burden" shifts to the government to prove "that all of the evidence it proposes to use was derived from legitimate independent sources." Id. That the government must prove that it derived all of its proposed evidence from legitimate independent sources is the purpose and substance of a Kastigar hearing.  See United States v. Kilroy, 27 F.3d 679, 683 (D.C.Cir.1994) ("The purpose of the Kastigar hearing is to determine whether or not coerced testimony has been used against the witness in violation of his Fifth Amendment rights.")

In the present case, Defendants seek a hearing analogous to a Kastigar hearing on what they contend is a Sixth Amendment violation.   In support of their motion, Defendants argue that

> [t]he undisputed monitoring in this case, and the resulting seizure of documents prepared at the request of the attorneys invaded the defendants' Fifth and Sixth Amendment rights and now presents the threat that the defendants' statements and preparation will be used against them at trial, clearly implicating their Fifth Amendment right not to incriminate themselves. Kastigar v. United States, 406 U.S. 441 (1972).  A Kastigar hearing is necessary in order for this Court to insure against such impermissible use.

(Def.'s Mem. at 2.)  Defendants further argue that they seek a Kastigar hearing

> for the purpose of requiring the Government to demonstrate that its case rests entirely on evidence obtained independent of the violations of privilege which have occurred in this case, and which this Court has held is not adequately addressed by the Government's offered 'taint team' protection.  The Government should now affirmatively demonstrate that the evidence upon which it intends to rely 'was derived from legitimate independent sources' and not from the privileged information. See Kastigar v. United States, 406 U.S. 441, 461-62 (1972).

(Def.'s Mem. at 2.)  Therefore, Defendants request a hearing similar to a Kastigar hearing in order to force the Government to prove that the evidence upon which it intends to rely at trial is derived from an independent source and not from the Government's actions that resulted in the violation of Defendants' Sixth Amendment rights.

8

A.     **Defendants' Joint Motion for a Kastigar Hearing is Denied Because There Is No Sixth Amendment Violation In the Present Case.**

Assuming without deciding that Defendants' would be entitled to a <u>Kastigar</u> hearing if a Sixth Amendment violation had occurred, the Court concludes that no Sixth Amendment violation occurred in the present case.

The Sixth Amendment provides that an accused shall enjoy the right "to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.  This right is meant to assure fairness in the adversary criminal process. <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344 (1963). "To establish a Sixth Amendment violation, a criminal defendant must show two things: first, that the government knowingly intruded into the attorney-client relationship; and second, that the intrusion demonstrably prejudiced the defendant . . . or created a substantial threat of prejudice." <u>United States v. Singer</u>, 785 F.2d 228, 234 (8th Cir. 1985) (internal citations omitted) (citing <u>United States v. Morrison</u>, 449 U.S. 361, 366 (1980); <u>Weatherford v. Bursey</u>, 429 U.S. 545 (1976);  <u>United States v. Davis</u>, 646 F.2d 1298, 1303 (8th Cir.), <u>cert. denied</u>, 454 U.S. 868 (1981)).

In the present case Defendants cannot satisfy the second prong of the analysis; that is, Defendants cannot show that the government intrusion in this case "demonstrably prejudiced the defendant . . . or created a substantial threat of prejudice." <u>Id</u>.  Defendants cannot make the required showing of a Sixth Amendment violation because Judge Tunheim's prior Order adopting the Magistrate's Report and Recommendation precluded a finding of prejudice in the present case.  The Order adopting the Report and Recommendation precludes a finding of prejudice in the present case because Judge Tunheim ordered the Government to return all "potentially privileged" documents to Defendants without review and to make photocopies of all other documents at the Government's expense for the defense.   The Court concluded that this remedy alleviated any potential prejudice

9

that might have existed because of the Government's actions.  Defendants cannot establish that the intrusion of the Government "demonstrably prejudiced the defendant . . . or created a substantial threat of prejudice;" therefore, Defendants cannot establish a Sixth Amendment violation in the present case.  Id.

To the extent that Defendants are suggesting that the act of gathering and organizing pre-existing documents at the direction of their attorneys converts these documents into work-product documents, the Court rejects this argument.  The work-product doctrine is codified in Fed. R. Civ. P. 26 (b)(3) and states that a party may not "obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" unless that party can make "a showing that the party seeking discovery has substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  The Eighth Circuit has stated that "[i]n order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation." PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir.2002).

In the present case, the materials at issue were pre-existing business records, and were not "prepared in anticipation of litigation, i.e., because of the prospect of litigation."  Id.  The mere fact that Defendants were directed by their attorneys to compile the documents they believed were relevant to their defense in order to prepare for trial does not convert these pre-existing business records into materials "prepared in anticipation of litigation" and hence these materials are not protected by the work product doctrine.  Id.

The Court similarly rejects Defendants' argument that these documents are protected by the

attorney-client privilege.  The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976).  In the present case, there is nothing in the documents at issue that would disclose any confidential communication between the defendants and their attorneys in order to obtain legal assistance.  Defendants in this case merely commenced gathering documents in order to facilitate the transfer of these documents to their attorneys so that these documents could be used to prepare for trial.

Since the Defendants cannot make the required showing of prejudice in the present case, Defendants cannot establish that a Sixth Amendment violation has occurred and therefore Defendants are not entitled to a Kastigar hearing.

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Joint Motion for a Kastigar Hearing [#80] be **DENIED**.


DATED: January 19, 2006                    s/ Franklin L. Noel
                                           FRANKLIN L. NOEL
                                           United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 3, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 3, 2006,** a complete transcript of the hearing.

11

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.