# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 05-94 (JRT/FLN) |
| Plaintiff/Respondent, | |
| v. | **ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |
| THOMAS ANDERSON, | |
| Defendant/Petitioner. | |

Francis J. Magill, Jr., Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff/respondent.

Thomas Anderson, #01386-090, FMC-Rochester, PMB 4000, Rochester, MN 55903-4000, defendant/petitioner *pro se*.

On March 1, 2006, following a ten-day trial in federal court, a jury found defendants Anthony Heppner and Thomas Anderson guilty of seventeen counts of mail fraud. The Court sentenced Heppner to forty-six months imprisonment and Anderson to fifty-one months imprisonment on each count, to be served concurrently. The Eighth Circuit affirmed defendants' convictions on direct appeal. *See United States v. Heppner*, 519 F.3d 744 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 250 (Oct. 6, 2008). The case is before the Court on Anderson's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court denies the motion.

# BACKGROUND[1]

In 2005, a grand jury indicted defendants on twenty counts of mail fraud under 18 U.S.C. § 1341. (Indictment, Docket No. 1.) The prosecution later dismissed three of those counts. (*See* Docket No. 106.) The indictment alleged that in 1999, Anderson and Heppner (collectively, "defendants") founded an investment club called the Skyward Group ("Skyward"), and solicited individuals to become members and investors. (Indictment ¶¶ 3-4, Docket No. 1.) The indictment further alleged that from January 1999 until February 2001, defendants aided and abetted each other to devise a scheme "to defraud and to obtain money and property by means of materially false and fraudulent representations," and that defendants knowingly sent mail through the United States Postal Service for the purpose of executing that scheme. (*Id.* ¶¶ 4-6.)

Prior to the return of the indictment, Postal Inspector Mary Agnew attempted to serve Anderson with a subpoena to appear before the Grand Jury. (Report & Recommendation at 3, Docket No. 72.) The subpoena requested Anderson to produce documents referring or relating to various entities, including Skyward. (*Id.*) Agnew met with Anderson at the United States Attorney's office. (*Id.*) Anderson claimed that he had brought the documents with him and had offered them to Agnew at that time, but that Agnew had refused them. (*Id.* at 2.) Agnew denied that Anderson had brought any documents with him, and also testified that she did not believe that Anderson would

---

[1] The Eighth Circuit's decision affirming defendants' convictions and this Court's prior rulings provide a complete factual and procedural background for this case. *Heppner*, 519 F.3d 744. (Docket Nos. 79, 127.) The Court reproduces that background here only to the extent necessary to rule on Anderson's § 2255 motion.

produce the documents because he was asserting a Fifth Amendment privilege against production.  (*Id.* at 4.)  The parties disagree that Agnew did not take possession of the documents or review them at that time.  (*See* Order at 2, Docket No. 79.)

At trial, the prosecution presented evidence showing that defendants were on Skyward's Board of Directors, and that they provided investors with loan agreements and membership application forms.  (Order at 2, Docket No. 127.)  During the course of defendants' scheme, approximately 1000 individuals invested over $1.6 million with Skyward.  (*Id.*)  Several individuals who had invested with Skyward testified at trial that they understood the money they loaned to Skyward was to be invested and that the Board of Directors was not to use it in any other fashion.  (*Id.*)

The prosecution also offered evidence tending to show that beginning in May 1999, both defendants began siphoning money out of Skyward for their own personal use.  (*Id.*)  The evidence at trial also tended to show that defendants made failed attempts to invest a portion of the money they raised.  (*Id.*)  For example, they provided $525,000 to a third party, Tim Oliver, to invest with another third party, Albert Pans.  (*Id.* at 2-3.)  Soon after Oliver delivered the money to Pans, Pans absconded with the funds.  (*Id.* at 3.)  Oliver testified at trial that he informed Heppner of the status of the Pans investment.  (*Id.*)  Nevertheless, defendants sent an update to their investors that falsely represented that the investors had made a profit on the Pans investment.  (*Id.*)  Defendants continued to send out false and misleading updates, and continued to solicit funds until the spring of 2000.  (*Id.*)

On March 1, 2006, a jury found defendants guilty of seventeen counts of mail fraud. (Jury Verdict, Docket No. 116.) After the Court denied defendants' joint motion for a new trial or acquittal, (*see* Order, Docket No. 127), the Court sentenced Anderson to 51 months for each of the seventeen counts, to be served concurrently. (Sentencing Hr'g Tr., Vol. II at 54.) In determining that Anderson's a total offense level under the United States Sentencing Guidelines ("U.S.S.G.") was 23, the Court applied a two-level enhancement because it found that defendants represented to Skyward investors that they were acting on behalf of a charitable organization, and the Court applied a two-level enhancement for obstruction of justice. (*Id.* at 47-48.) The Court also imposed on Anderson seventeen separate $100 special assessment fees, one for each count of mail fraud on which the jury found Anderson guilty. (*Id.* at 48, 57.)

Defendants appealed to the Eighth Circuit and on March 13, 2008, the Eighth Circuit affirmed. *Heppner*, 519 F.3d at 746. On October 6, 2008, the United States Supreme Court denied Anderson's petition for certiorari.

On October 5, 2009, Anderson filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, (*see* Docket No. 221), and on December 22, 2009, Anderson filed a *pro se* motion to amend the § 2255 motion to add additional claims, (*see* Docket No. 230). Over the course of a 77-page memorandum in support of his original motion, a 37-page reply memorandum, and a 20-page memorandum supporting a motion to amend the § 2255 motion, Anderson challenges significant portions of his pre-trial, trial, post-trial, and appellate proceedings. (*See* Docket Nos. 222, 229, 231.) Anderson ties the majority of his arguments to claims that his trial and appellate counsel, Thomas

Dunnwald, was constitutionally ineffective. For the reasons set forth below, the Court concludes that Anderson's § 2255 motion has no merit and the Court accordingly denies the motion.

## DISCUSSION

A prisoner may file a motion to vacate, set aside, or correct a sentence imposed by a federal district court if "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

> A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error. Absent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice. To establish ineffective assistance of counsel within the context of section 2255, however, a movant faces a heavy burden[.]

*Id.* (citations omitted); *see Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).

To support a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong of *Strickland*, a defendant must show that counsel's performance

"fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances." *United States v. Acty*, 77 F.3d 1054, 1059 (8th Cir. 1996) (internal quotation marks omitted). The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. To satisfy the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In reviewing Anderson's claims of ineffective counsel, the Court "need not address the reasonableness of [Dunnwald's] behavior if [Anderson] cannot prove prejudice." *Apfel*, 97 F.3d at 1076.

Anderson asserts several grounds for relief under § 2255. Anderson contends that Dunnwald was constitutionally ineffective because he (1) failed to convey to Anderson a plea offer by the prosecution; (2) did not object to the prosecution's allegedly improper statements during closing arguments; (3) "constructively forfeited the [direct] appeal with frivolous issues"; (4) did not disclose his knowledge of or involvement in a separate civil action involving Heppner; (5) did not object to the prosecution's knowing presentation of false testimony at trial; (6) failed to pursue Anderson's Confrontation Clause claims at trial or on appeal; (7) failed to object to this Court's imposition of seventeen separate $100 special assessment fees; (8) failed to present evidence in opposition to a two-level sentencing enhancement for obstruction of justice; and (9) failed to present evidence in opposition to the two-level sentencing enhancement for misrepresentations about Skyward's charitable status. (*See generally* Mem. in Supp. of Pet'r's 28 U.S.C. § 2255

Mot., Docket No. 222 & Ex. 1.)  Anderson also contends that he is entitled to relief because the Court did not provide Anderson with substitute counsel at sentencing.  (*Id.* at 20.)  To the extent that Anderson is not successful on those individual grounds for relief, Anderson argues that Dunnwald's cumulative errors compel relief.[2]  (*Id.* at 67-75.)  The Court addresses Anderson's claims in turn, and then addresses Anderson's motion to amend the § 2255 motion.

## I.    FAILURE TO CONVEY A PLEA OFFER

Anderson argues that Dunnwald was ineffective because he failed to convey to Anderson a plea offer from the prosecution.  (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 6-7, Docket No. 222 & Ex. 1.)  Anderson asserts that the prosecution, through Assistant United States Attorney Frank Magill, sent Dunnwald a plea offer prior to trial and stated in a separate email that "[t]his is a particularly good deal for Mr. Anderson because he would be just above a probationary sentence."  (Pet'r's Exs. at 32, Docket No. 222.)  Anderson claims that Dunnwald did not convey the contents of the proposed plea offer to Anderson and contends that "[w]hether the offer would have been accepted or

---

[2]  Without linking the alleged errors at trial and on appeal to claims of ineffective assistance of counsel, Anderson would likely not be permitted to pursue many of the alleged claims here.  *Cf. Houser v. United States*, 508 F.2d 509, 513-516 (8th Cir. 1974) (listing grounds for relief – including "[c]laimed errors in evidentiary rulings . . . or because of alleged prejudicial statements by the  . . . prosecutor" – that are not cognizable under § 2255).  Although "most claims of ineffective assistance of counsel" are not cognizable under § 2255, "lack of effective assistance of counsel also raises a constitutional issue cognizable in a collateral proceeding, but substantial proof of incompetency of counsel is required for relief."  *See id.* at 516; *see also id.* at 517 ("A denial of counsel, an unintelligent waiver of counsel, or the failure of counsel to take an appeal may be raised by [a §] 2255 motion." (footnotes omitted)).

not, is not the test for Dunnwald's ineffective representation." (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 6-7, Docket No. 222 & Ex. 1.)

"*Strickland*'s two-part test applies to ineffective assistance claims arising out of the plea process." *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998). Anderson, however, has not demonstrated that he would have considered or accepted the plea offer, *Chesney v. United States*, 367 F.3d 1055, 1060 (8th Cir. 2004), and therefore he cannot establish prejudice under the second prong in *Strickland*.

As an initial matter, it is not clear that the prosecution conveyed a plea offer to Dunnwald, which Dunnwald in turn failed to convey to Anderson. That is, the statements in the cited email, alone, do not support the conclusion that the prosecution made a new or different plea offer, the substance of which Anderson was not apprised. Moreover, Anderson has not submitted any evidence – for example, an affidavit – stating that he would have pleaded guilty under the still-undefined terms of the alleged plea offer and "even the motion to vacate does not assert directly that [Anderson] would have pleaded guilty." *Id.* Moreover, Anderson strongly maintained his innocence throughout the pretrial proceedings, during his testimony at trial, and during sentencing, and Anderson's conduct does not suggest that he would have pleaded guilty under the circumstances. *Cf. id.* ("We interpret the district court's ruling to mean that having personally observed [the defendant's] extensive trial testimony, in which he adamantly denied guilt, the court did not believe that [the defendant] would have pleaded guilty under the prosecution's pretrial offer, even assuming he won the inevitable swearing contest with his trial counsel about whether the plea offer was communicated."); *Stevens*, 149 F.3d at 748 ("When [the

defendant] took the stand at the post-trial hearing on his new trial motion, [the defendant] maintained his innocence.  Thus, [the defendant] has failed to show any prejudice[.]").

Accordingly, the Court rejects Anderson's argument that he was deprived of constitutionally effective assistance of counsel by virtue of Dunnwald's alleged failure to convey to Anderson a plea offer.  The Court denies Anderson's motion on that ground.

## II.     THE PROSECUTION'S CLOSING ARGUMENT

Anderson argues that Dunnwald was constitutionally ineffective because he did not object to certain portions of the prosecution's closing argument, including the prosecution's reference to Anderson's "consciousness of guilt," improper vouching for a witness' credibility, and improper statements about Barbara Anderson's credibility.

In the context of a § 2255 motion, the question before the Court is whether Dunnwald was constitutionally ineffective for failing to object to the prosecution's statements during closing arguments.  *Cf. Houser*, 508 F.2d at 515-16 ("[A]lleged prejudicial statements by the . . . prosecutor do not state a claim for relief under [§] 2255." (footnote omitted)).  Counsel may be constitutionally ineffective if he or she "fail[ed] to make a constitutional objection to a prosecutor's improper comment" if the comment implicates the defendant's specific constitutional rights and the defendant was prejudiced.  *See Burns v. Gammon*, 260 F.3d 892, 897 (8th Cir. 2001).  Anderson argues that he was prejudiced because Dunnwald's failure to object to portions of the prosecution's closing argument "eviscerated all possibilities of being found innocent.  But for the prosecutor's improper closing argument, assailing [Anderson's] wife,

vouching for Tim Oliver, and declaring Petitioner Anderson guilty, the result of the proceeding would have been different." (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 11, Docket No. 222 & Ex. 1.)

To determine whether Dunnwald was ineffective, the Court must first consider whether there was prosecutorial misconduct during closing arguments. "To prove prosecutorial misconduct, a defendant must demonstrate (1) that the prosecutor's comments were improper, and (2) that the comments prejudicially affected the defendant's substantial rights such that he was denied a fair trial." *United States v. Londondio*, 420 F.3d 777, 787 (8th Cir. 2005). "If [the Court] reach[es] the second step, [it] consider[s] (1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court." *Id.* (internal quotation marks omitted). For the reasons set forth below, the Court concludes that Anderson has not established that the prosecution's statements identified by Anderson were improper.

A.    **"Consciousness of Guilt"**

Anderson contends that Dunnwald was ineffective because he did not object to the prosecution's reference to Anderson's "consciousness of guilt" during closing argument. During closing argument, the prosecution claimed that Anderson's "consciousness of guilt" was apparent from the facts of the case. (Trial Tr., Vol. X at 2040.) The prosecution further stated that the evidence showed that during an investigation by the Commodity Futures Trading Commission ("CFTC") into Skyward, Anderson had

represented to the CFTC that he was not an agent for Skyward and only had club membership papers – notwithstanding the evidence presented at trial demonstrating that he was on Skyward's Board of Directors and controlled Skyward's bank account. The prosecution argued that Anderson made those misrepresentations to the CFTC because he wanted to hide his involvement with Skyward and prevent the CFTC from accessing Skyward records.[3] (*Id.* at 2040-41.)

Anderson's misrepresentations to the CFTC were probative of his knowledge and intent, which are key elements of the offense of mail fraud under 18 U.S.C. § 1341. *See United States v. Jolivet*, 224 F.3d 902, 907 (8th Cir. 2000) ("In order to sustain a conviction for mail fraud, the government must show that the defendant knowingly participated in a scheme to defraud, and that it was reasonably foreseeable that the mails would be used to effectuate the scheme."); *see also United States v. Richardson*, 427 F.3d 1128, 1133 (8th Cir. 2005) ("[The consciousness of guilt] evidence was probative on an essential element of the charges against Richardson: that he was an addict or user of controlled substances."), *vacated in part on other grounds*, 439 F.3d 421 (8th Cir. 2006) (en banc) (per curiam). As a result, the prosecution's comments regarding Anderson's knowledge and intent were not improper, and Dunnwald did not act unreasonably when he did not object to the comments.

---

[3] Anderson identifies other instances in which the government referred to "consciousness of guilt," but in those instances, the government referred to Heppner's consciousness of guilt. (*See* Trial Tr., Vol. X at 2041-44.)

### B. Vouching

Anderson argues that the prosecution improperly vouched for the credibility of witness Timothy Oliver. "Improper vouching occurs when a prosecutor refers to facts outside the record, implies that the witness's testimony is supported by facts not available to the jury, gives an implied guarantee of truthfulness, or expresses a personal opinion regarding witness credibility." *United States v. Beaman*, 361 F.3d 1061, 1065 (8th Cir. 2004); *see also United States v. Smith*, 962 F.2d 923, 933 (9th Cir. 1992) ("Improper prosecutorial vouching occurs when the prosecutor place[s] the prestige of the government behind the witness by providing personal assurances of [the] witness's veracity." (internal quotation marks omitted; alterations in original)). The Supreme Court explained:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985).

Anderson challenges three statements. First, Anderson challenges the prosecution's rhetorical question to the jury, "Why would Mr. Oliver lie to [Anderson and Heppner] about the terms of the investment if he thought it was going to be a success, which he did." (Trial Tr., Vol. X at 2035.) Second, Anderson challenges the prosecution's statement that "All of this supports exactly what Mr. Oliver told you." (*Id.*

at 2037.) Neither of these statements constitutes vouching. In the first statement, the prosecution merely addresses Oliver's motive to lie, which the prosecution may properly discuss in its closing argument. *See United States v. DeVore*, 839 F.2d 1330, 1333 (8th Cir. 1988). The second statement asserts that other evidence introduced at trial corroborated Oliver's testimony. "Because the comment was immediately preceded by the prosecutor's argument that corroborating evidence showed the witness to be truthful, the prosecutor's comment was a permissible inference from the evidence, not improper vouching." *See United States v. Johnson*, 437 F.3d 665, 673 (7th Cir. 2006) (internal quotation marks omitted).

The third statement that Anderson challenges is the prosecution's assertion that "[Oliver] can be prosecuted if we develop a case that he has done something wrong." Anderson argues that the statement implied that the prosecution "possessed some special knowledge that Oliver was telling the truth, and had not committed any criminal acts when [the prosecution] vouched for Oliver." (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 16, Docket No. 222 & Ex. 1.) Anderson, however, cites the prosecution's statement out of context. The prosecution did not claim – as Anderson suggests – that Oliver could be prosecuted for perjury if he had lied during his trial testimony, a claim which would amount to vouching for Oliver's credibility. *Cf. Smith*, 962 F.2d at 933. Rather, the prosecution asserted that Oliver's proffer of evidence in the case did not provide him immunity from being prosecuted for criminal wrongdoing, and that assertion does not constitute improper vouching. Accordingly, the Court denies Anderson's motion to the extent it is based on claims of improper vouching.

**C.     Statements About Barbara Anderson's Credibility**

Anderson contends that the prosecution improperly attacked the truthfulness of the testimony of Anderson's wife, Barbara Anderson.  Anderson argues that there was no evidence suggesting that Barbara Anderson testified untruthfully and that the prosecution's assertions were merely opinions.

During the investigation into defendants' activities with Skyward, a Grand Jury subpoena was issued to obtain handwriting samples from both Anderson and his wife and also to obtain records regarding or relating to Skyward that were in the Andersons' possession.  (Trial Tr., Vol. X at 1936-40.)  During closing argument, the prosecution recalled evidence introduced at trial that the Andersons did not attempt to comply with the subpoena.  The prosecution then stated, "Barbara Anderson wants to make you think that she brought all of the[ Skyward] records in response to the Grand Jury subpoena.  I mean, is that even credible on its face?"  (*Id.* at 2112-13.)  The prosecution further reasoned that Agnew, who had worked on the case for "a couple of years," would not have turned down "the mother lode of documents" from the Andersons.  (*Id.*)

"Where the government characterizes a witness's credibility based on the evidence, the argument is proper because it is based on the record instead of the prosecutor's own personal belief."  *See Johnson*, 437 F.3d at 673 (internal quotation marks omitted).  Here, the prosecution linked its closing argument statements about Barbara Anderson's credibility to other evidence at trial – including testimony from Agnew.  As a consequence, the prosecution did not make any improper closing argument

and Dunnwald was not ineffective by failing to object during the government's closing argument. Anderson's motion is denied on these grounds.

## III.    CONSTRUCTIVE FORFEITURE OF ISSUES ON APPEAL

Anderson next argues that he "was denied effective assistance of counsel during direct appeal when trial counsel constructively forfeited the appeal with frivolous issues, creating 'cause and prejudice' for the issues presented herein." (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 21, Docket No. 222 & Ex. 1.) Even liberally construing Anderson's arguments, *see Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), the Court is unable to decipher a basis on which it could grant Anderson relief.

The Sixth Amendment guarantees a defendant the right to appointed counsel in his first appeal from a judgment of conviction. *Coleman v. Thompson*, 501 U.S. 722, 755-56 (1991). Anderson appears to argue that Dunnwald's arguments on appeal were unreasonable and therefore "forfeit[ed] [Anderson's] only chance for an 'adequate and effective' direct appeal." (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 23, Docket No. 222 & Ex. 1.) Anderson also contends that his right to counsel on his first appeal was violated because he repeatedly fired Dunnwald after filing with the "Eighth Circuit a Notice to Cancel Direct Appeal," but that Dunnwald continued to represent him during direct appeal. (*Id.* at 25.) Anderson's assertions are without merit. Anderson does not identify any claims that Dunnwald should have asserted and that were procedurally defaulted. Moreover, Dunnwald raised several relevant, meaningful arguments on direct appeal, challenging the Court's jury instructions, arguing that the prosecution failed to

disclose exculpatory evidence, and arguing that the Court erred by admitting Heppner's testimony before the CFTC.  *See Heppner*, 519 F.3d at 748.

Anderson's claim of "constructive forfeiture" is unclear, and the Court finds that Anderson has not established that he was denied effective assistance of counsel on his first appeal.  Thus, the Court denies Anderson's § 2255 motion on those grounds.

## IV. DUNNWALD'S CONFLICT RELATED TO THE SOVEREIGN RESOURCE MANAGAMENT MATTER

Anderson makes a vague claim that he was denied a fair trial and effective assistance of counsel because Dunnwald had a conflict of interest in representing Anderson.  (*See generally* Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 26-32, Docket No. 222 & Ex. 1.)  Anderson first contends that defendants' "Joint Motion to Sever Counts and Defendants" prior to trial, (*see* Docket No. 29), constituted "a request for separate counsel and trial," (*see* Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 31, Docket No. 222 & Ex. 1).  Anderson also argues that Dunnwald knew "of . . . Heppner's prosecution and subsequent conviction" in a case brought by the CFTC against a company known as Sovereign Resource Management ("SRM"), but that Dunnwald "concealed that fact from th[e] Court and [Anderson]."  (*Id.* at 26.)  Anderson's argument fails because he has not established that Dunnwald had any conflict of interest in representing Anderson and because Anderson has not demonstrated that he was prejudiced by any conceivable conflict of interest.

"A defendant who timely raises a claim of conflict of interest arising from joint representation is entitled to automatic reversal in the absence of a finding that no conflict

existed." *Noe v. United States*, 601 F.3d 784, 789 (8th Cir. 2010). A defendant who raises a claim of conflict of interest arising out of joint representation after trial – where the defendant did not raise the issue at trial – "must show an actual conflict of interest that affected the adequacy of his representation." *Id.*; *see also Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980).

The Court first rejects Anderson's assertion that the "Joint Motion For Severance of Counts and Defendants" operated as a request for separate counsel.[4] Nothing in that motion indicates that Heppner or Anderson specifically requested separate counsel. More importantly, Heppner and Anderson were already represented by separate counsel, and were not jointly represented. "Joint representation occurs when . . . two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and . . . the defendants are represented by the same counsel, or counsel who are associated in law practice." Fed. R. Crim. P. 44(c)(1). During pre-trial proceedings and at trial, Dunnwald represented Anderson and attorney Dean Grau separately represented Heppner.[5] (*See* Docket Nos. 41-42, Crim. No. 05-94.)

---

[4] Anderson asserts that he testified at a pretrial hearing that he had entered into a "joint defense agreement" with Heppner and that such testimony established "the fact of a joint defense agreement and dual representation." Anderson does not provide any basis for the assertion that the joint defense agreement provided that Heppner and Anderson would be "**represented** by the same counsel, or counsel who are associated in law practice." *See* Fed. R. Crim. P. 44(c)(1)(B) (emphasis added).

[5] Anderson does not claim and there is no support for the assertion that Dunnwald was involved with the SRM case.

Moreover, there is no merit to Anderson's argument that Dunnwald concealed from Anderson and the Court information about Heppner's involvement in the SRM civil litigation. Contrary to Anderson's assertions, Heppner was not prosecuted and convicted in a separate criminal trial involving SRM. Rather, Heppner was a defendant in a civil suit involving SRM. Although Heppner was ultimately found liable at summary judgment for his actions relating to SRM, *see Commodity Futures Trading Comm'n v. Sovereign Resource Mgmt., Inc.*, Civ. No. 02-1783, 2005 WL 3602039, at *5 (D. Minn. Dec. 5, 2005), the government did not initiate criminal proceedings against Heppner for his involvement in SRM.[6] Even Anderson admitted at trial that SRM and Skyward were unrelated: when asked whether "[SRM] and Skyward are completely unrelated," Anderson responded, "100%." (Trial Tr., Vol. VIII at 1485.) There is also no support for the assertion that Dunnwald concealed information about the SRM proceedings from the Court. During trial, the Court admitted into evidence portions of Heppner's testimony before the CFTC relating to the SRM litigation. Indeed, as outlined further below, Anderson argues that the Court erred in admitting that testimony.

Finally – and fatal to these grounds for relief – Anderson has not established that he was prejudiced by any conflict of interest. Anderson offers only an unsupported conclusion that he was prejudiced by Dunnwald's alleged actions. Anderson contends that Dunnwald's failure to disclose his knowledge of the SRM proceedings to the Court

---

[6] Although the government brought a criminal action in federal court relating to SRM's activities, the only individual indicted and convicted in those proceedings was Kenneth Mitra, the head of SRM. (*See United States v. Mitra*, Crim. No. 04-225, (D. Minn.).) Dunnwald was not involved in either the SRM civil case or the Mitra criminal case.

prevented the Court from holding an evidentiary hearing under Federal Rule of Criminal Procedure 44(c)(2), which requires the Court to "promptly inquire about the propriety of joint representation and . . . personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Anderson and Heppner, however, were not jointly represented. Thus, Rule 44(c)(2) is inapplicable and Anderson was not prejudiced when the Court did not hold a hearing on the "propriety of joint representation."

## V. KNOWING PRESENTATION OF FALSE TESTIMONY

Anderson argues that Dunnwald was constitutionally ineffective because he did not object to the prosecution's knowing presentation of Agnew's false testimony regarding Anderson's compliance with the 2004 Grand Jury subpoena. (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 36, Docket No. 222 & Ex. 1.) "The prosecution may not use or solicit false evidence, or allow it to go uncorrected." *United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995). To prove prosecutorial use of false testimony that "violates due process, the testimony must have been perjured, the government must have known it was, and there must have been a reasonable likelihood that the perjured testimony affected the jury's factual determinations." *United States v. Boone*, 437 F.3d 829, 840 (8th Cir. 2006).

Anderson claims that Agnew falsely testified that neither Anderson nor his wife brought the subpoenaed documents relating to Skyward to their meeting with Agnew when they responded to the subpoena. Anderson asserts that the prosecution solicited the

false testimony to show the jury that Anderson was attempting to "hide his crime." (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 37-38, Docket No. 222 & Ex. 1 (internal quotation marks omitted).)  In sum, Anderson argues that "[b]ut for Agent Agnew's false testimony regarding [Anderson's] alleged violation of the 2004 subpoena, there is a reasonable likelihood [Anderson] would have been acquitted without that testimony in the record." (*Id.* at 38.)  Anderson also suggests that "he was convicted for allegedly not producing records to the grand jury, rather than the actual vague evidence the government presented during the trial." (*Id.*)

At trial, Agnew testified that the Andersons did not give her any subpoenaed records when they responded to the Grand Jury subpoena.  (Trial Tr., Vol. IX at 1828.) Anderson argues that the prosecution solicited that testimony to give the "false impression that [Anderson] had refused to produce those documents."  (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 42, Docket No. 222 & Ex. 1.)

Anderson argues that Agnew's testimony in pre-trial hearings and Agnew's report in a "Memorandum of Interview" "prove that Anderson complied with the subpoena." (*Id.* at 42.)  In a hearing on defendants' Motion to Dismiss, the prosecution asked Agnew "Did you ever ask for the documents that had been subpoenaed?" to which Agnew responded, "No.  Because initially when [Anderson] came in, he made it clear that they weren't there to answer questions. . . . There was no discussion about records." (Sept. 28, 2005, Tr., at 63:13-25, Pet'r's Exs. at 18.)  In the "Memorandum of Interview," Agnew states that she told Anderson that she would "verify that he had complied," with the subpoena.  (Pet'r's Exs. at 20.)

Anderson has not established that Agnew's testimony was false or that Agnew's testimony gave the jury the "false impression" that Anderson was attempting to hide his crime by failing to turn over subpoenaed documents. Agnew's pre-trial testimony does not suggest that Agnew testified falsely at trial. Rather, Agnew consistently testified that Anderson did not provide the subpoenaed documents when he appeared pursuant to the Grand Jury subpoena. In the Memorandum of Interview, Agnew states that she would verify that Anderson had "complied," but the memorandum discusses only the subpoena request for a handwriting sample. (*See* Mem. of Interview, Pet'r's Exs. at 19-21.) Neither Agnew's pretrial testimony nor the Memorandum of Interview "prove" that Anderson complied with the 2004 subpoena's request for documents. *Cf. Holt v. United States*, 303 F.2d 791, 794 (8th Cir. 1962) ("The gist of appellant's complaint is that [the] government witness['] . . . testimony was false because it was in some particulars not consistent with his testimony in [a prior] trial. . . . [S]uch inconsistencies, placed before the jury, obviously went to the credibility of the witness.").

Moreover, Agnew's trial testimony did not convey to the jury a "false impression" that Anderson did not attempt to produce the subpoenaed documents. Anderson has not conclusively established that he attempted to turn over the documents or that Agnew's testimony was actually false. Anderson concedes that he did not turn the subpoenaed documents over to Agnew. Further, to the extent that Agnew's testimony could be considered false, Anderson has not shown that the prosecution knew or should have known it was false or that the mere statement that Anderson did not turn over the

requested documents resulted in a "a reasonable likelihood that the perjured testimony affected the jury's factual determinations." *Boone*, 437 F.3d at 840.

Anderson also contends that the prosecution solicited false testimony from Agnew relating to the "Georgia Trust," an account to which Anderson wired $20,000 of Skyward funds. (Pet'r's Exs. at 24.) At trial, Agnew testified that she did not know – and was unable to determine – what the Georgia Trust was. (Trial Tr., Vol. Vol. XII at 1657.) Anderson cites an ambiguous handwritten memo containing the words "Georgia Trust," a routing number, and an account number in support of his argument. That evidence, however, is not probative of the issue of Agnew's truthfulness or of whether the prosecution knew or should have known that it was soliciting false testimony.

Accordingly, the Court denies Anderson's motion on the grounds that the prosecution knowingly presented false testimony and that Dunnwald was constitutionally ineffective by not objecting to that testimony.

## VI. THE ADMISSIBILITY OF HEPPNER'S CFTC TESTIMONY

During trial, the prosecution read part of Heppner's testimony regarding Skyward, which he gave during the CFTC's investigation of SRM. Anderson appears to argue that Dunnwald acted unreasonably by failing to object to that evidence at trial and by failing to pursue the issue on appeal. (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 47-54, Docket No. 222 & Ex. 1.) The Court disagrees.

Dunnwald objected to the admissibility of Heppner's CFTC testimony, as redacted, during trial. (Trial Tr., Vol. VIII at 1504-05). The Court overruled the

objections and concluded that the redacted transcript could be read to the jury, but not admitted as evidence.  (*Id.* at 1506-07.)  Dunnwald challenged the Court's ruling on direct appeal.  *Heppner*, 519 F.3d at 750-52.  The Eighth Circuit determined that the Court did not abuse its discretion in admitting Heppner's CFTC testimony and that the admission of the testimony did not violate Anderson's Sixth Amendment Confrontation Clause rights.  *Id.* at 751-52.  Because the Eighth Circuit considered Anderson's claim on direct review, it may not be relitigated in a petition for relief under 28 U.S.C. § 2255.  *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993); *Thompson v. United States*, 7 F.3d 1377, 1378-79 (8th Cir. 1993) (per curiam).  To the extent that Anderson contends Dunnwald was constitutionally ineffective for failing to object to the admissibility of the testimony at trial or for failing to challenge the Court's ruling on direct appeal, the procedural and factual record directly contradicts that contention.  Accordingly, the Court denies Anderson's motion on those grounds.

## VII.   MULTIPLE SPECIAL ASSESSMENTS

Anderson argues that he was deprived of effective assistance of counsel at sentencing when Dunnwald failed to object to "the imposition of seventeen seperate [sic] $100.00 mandatory special assessment fees in violation of the concurrent sentence doctrine."  (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 56, Docket No. 222 & Ex. 1.) *Cf.* 18 U.S.C. § 3013(a)(2)(A) ("The court shall assess on any person convicted of an offense against the United States . . . in the case of a felony . . . the amount of $100 if the defendant is an individual[.]").  Anderson contends that under *Rutledge v. United*

*States*, 517 U.S. 292 (1996), the Court's imposition of multiple special assessments violated his double jeopardy rights.

To determine whether a defendant has been punished twice for the same offense in violation of his or her double jeopardy rights, the Court considers whether "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 297 (internal quotation marks omitted).

In *Rutledge*, a jury found the defendant guilty of two offenses relevant to the appeal: participating in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and conducting a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. *Id.* at 294. The district court entered judgment of conviction on both counts and imposed a sentence of life imprisonment on each count, the sentences to be served concurrently. *Id.* at 295. The district court also imposed a $50 special assessment fee on each count in accordance with 18 U.S.C. § 3013. *Id.* The defendant appealed. Concluding that the conspiracy count was a lesser included offense of the CCE offense, the Supreme Court set aside the conviction for conspiracy as violating the defendant's double jeopardy rights. *Id.* at 300, 302-03. Because the district court had imposed a special assessment fee for each offense, the Supreme Court also set aside the special assessment fee for the conspiracy to distribute offense. *See id.* at 302-303 (citing *Ball v. United States*, 470 U.S. 856, 864 (1985)).

Anderson's reliance on *Rutledge* is misplaced. The jury did not convict Anderson of any lesser-included offenses. Instead, the jury convicted Anderson of seventeen distinct counts of mail fraud. The Court's imposition of seventeen special assessment fees was therefore appropriate, and Dunnwald did not act unreasonably by not objecting to those assessments. *See, e.g.*, *United States v. Small*, Civ. No. 07-cv-00026; Crim. No. 01-cr-00214, 2007 WL 2889481, at *5 (D. Colo. Sept. 28, 2008) ("Small was convicted of numerous drug crimes and conspiracy to commit them. Under these circumstances, the multiple special assessments do not constitute cumulative punishments[.]"); *cf. United States v. Jones*, 403 F.3d 604, 607 (8th Cir. 2005) (setting aside a special assessment fee imposed for a conviction entered in violation of defendant's double jeopardy rights); *United States v. Christner*, 66 F.3d 922, 927 (8th Cir. 1995). Accordingly, the Court denies Anderson's motion on those grounds.

## VIII. OBSTRUCTION OF JUSTICE SENTENCING ENHANCEMENT

Anderson contends that Dunnwald was constitutionally ineffective because he did not adduce evidence or call witnesses at sentencing to rebut the Court's findings supporting an enhancement under the United States Sentencing Guidelines for obstruction of justice. Specifically, Anderson contends that the Court's findings relating to the "obstruction of justice" enhancement were based on Agnew's allegedly false testimony.

U.S.S.G. § 3C1.1 provides for a two-level enhancement to a defendant's offense level

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense[.]

U.S.S.G. § 3C1.1. The commentary to § 3C1.1 also states that "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.* cmt. n.1.

The Court found that a two-level enhancement to Anderson's base offense level was appropriate. In particular, the Court found that Anderson failed to produce records from Skyward after being served with a Grand Jury subpoena and then lied about whether Agnew rejected the subpoenaed documents when Anderson offered them. (*See* Sentencing Hr'g Tr., Vol. II at 42, 48; Government's Sentencing Position at 12, Docket No. 132). The Court found that Anderson obstructed the CFTC's investigation into Skyward when he represented to the CFTC that he "was not an agent for Skyward," and was only a "participant in the private club." Anderson turned over only "club membership" papers to the CFTC, and at trial, the prosecution presented evidence that Anderson was, in fact, on the Board of Directors for Skyward and that he had failed to turn over several boxes of Skyward records that he had kept in his home.

Anderson argues that Dunnwald should have submitted several pieces of evidence that would negate the Court's findings relating to the obstruction-of-justice sentencing enhancement. First, Anderson points to a government "Fact Witness Voucher" that

reimbursed Anderson for his expenses related to making his Grand Jury appearance. (*See* Pet'r's Exs. At 29, Docket No. 222.) Second, Anderson contends that because the prosecution did not seek a contempt order for his alleged failure to comply with the Grand Jury subpoena, "Anderson's complying with the subpoena is self-evident." (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 60, Docket No. 222 & Ex. 1.) Third, Anderson points to the "Memorandum of Interview" which, Anderson claims, contradicts Agnew's sworn testimony at trial that Anderson did not bring the subpoenaed documents with him. (*Id.*) Anderson contends that Dunnwald was aware of that memorandum, but failed to introduce it at sentencing in support of Anderson's objection to the obstruction-of-justice enhancement. (*Id.*) Anderson's arguments do not have merit.

First, contrary to Anderson's claim, the "Fact Witness Voucher" does not certify that Anderson complied in full with the subpoena. Although the voucher evidences that Anderson was reimbursed for his travel, expenses, and time, it is merely an administrative document and does not certify that Anderson was in compliance with every aspect of the subpoena. Second, Anderson does not offer any support for the bald assertion that the prosecution's decision not to pursue a contempt order is relevant to whether the obstruction enhancement is appropriate. Finally, Agnew's "Memorandum of Interview" with Anderson at the time of the Grand Jury appearance is not probative. Anderson cites the following portion of the interview memo:

> Anderson asked whether someone needed to sign the subpoena indicating that he had complied. I told him that I could verify that he had complied. Anderson said he did not want anyone coming after him claiming that he had not properly complied with the subpoena. I told him this would not be

the case and asked him to make sure he took copies of the subpoena with him when he left.

(Exs. at 20-21, Docket No. 222.)

The memorandum, however, discusses the subpoena in general terms briefly, and reports specifically on Agnew and Anderson's interactions relating to his handwriting sample. In that context, Agnew's statement in the memorandum would not have shed doubt on the Court's findings at sentencing.

Moreover, even if the Court were to conclude that Dunnwald was ineffective for failing to present evidence at sentencing, Anderson has not demonstrated that "there is a reasonable probability that, but for [Dunnwald's] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court applied the two-level enhancement in significant part based on a finding that Anderson made misrepresentations in response to the CFTC's subpoena. (*See* Sentencing Hr'g Tr., Vol. II at 42, 48.) Anderson has not produced evidence that would tend to contradict that finding, and Anderson therefore has not established prejudice. Accordingly, the Court denies Anderson's motion on those grounds.

## IX. THE "CHARITABLE" SENTENCING ENHANCEMENT

Anderson argues that Dunnwald was ineffective because he did not present evidence or argue in opposition to a two-level enhancement at sentencing for misrepresenting that he was acting on behalf of a charitable organization. Specifically, Anderson contends that Dunnwald should have argued that Anderson did not personally represent to Skyward members that profits would be used for charitable or religious

purposes. Anderson argues that the evidence demonstrates that only Heppner made those representations to Skyward members and that Dunnwald was ineffective because he did not call Skyward member-witnesses to testify at sentencing that Anderson did not make representations to them regarding Skyward's charitable objectives.

Under U.S.S.G. § 2B1.1, the Court will apply a two-level upward adjustment "[i]f the offense involved . . . a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization." U.S.S.G. § 2F1.1(b)(4)(A) (2000)[7]; *United States v. Edelmann*, 458 F.3d 791, 814-15 & n.5 (8th Cir. 2006). Anderson has not demonstrated that Dunnwald was ineffective in opposing the two-level charitable enhancement. As an initial matter, Dunnwald made the very argument at sentencing that Anderson claims Dunnwald failed to argue: Dunnwald argued that representations about Skyward's religious or charitable purposes could not be "attribute[ed]" to Anderson. (Sentencing Hr'g Tr., Vol. II at 49-50.) Further, the Court had adequate evidence before it to find that the charitable enhancement was appropriate. Although Skyward members testified that Heppner made many of the charitable representations or that they did not know who made the charitable representations, (*see* United States' Position with Respect to Sentencing Factors, Exs. A, B, Docket No. 132), the evidence at trial also indicated that Anderson distributed materials to Skyward members representing that Skyward profits would be distributed to charitable or religious

---

[7] Section 2F1.1(b)(4)(A) was deleted effective November 1, 2001. The relevant provision is now found in U.S.S.G. § 2B1.1(b)(8)(A).

organizations. Consequently, Anderson has not established that he suffered prejudice. The Court therefore denies Anderson's motion on those grounds.

## X.     UNWANTED COUNSEL

Anderson argues that he was denied effective assistance of counsel prior to sentencing because the Court refused to appoint new counsel to represent him after Anderson's relationship with Dunnwald resulted in a "complete break-down in communication" and Anderson asked for permission to "fire" Dunnwald. (Mem. in Supp. of Pet'r's 28 U.S.C. § 2255 Mot. at 20, Docket No. 222 & Ex. 1.) Specifically, Anderson argues that he did not receive "the defense guaranteed him by the Constitution" because "unwanted counsel" represented him. (*See id.* (quoting *Faretta v. California*, 422 U.S. 806, 821 (1975) (internal quotation marks omitted)).) *Cf. Houser*, 508 F.2d at 517 ("A denial of counsel . . . may be raised by [a §] 2255 motion."). Anderson also asserts that he was denied effective assistance of counsel "in preparing his Motion to Fire his Trial Attorney." (*Id.*)

"An indigent defendant is entitled to appointed counsel, but not necessarily to appointed counsel of his choice." *United States v. Torres-Rodriguez*, 930 F.2d 1375, 1380 n.2 (9th Cir. 1991), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137, 142 (1995). The Sixth Amendment does not guarantee the right to "a meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 & n.6 (1983) (internal quotation marks omitted). "To warrant substitute counsel, a defendant must show justifiable dissatisfaction with appointed counsel." *United States v.*

*Sayers*, 919 F.2d 1321, 1323 (8th Cir. 1990).  A defendant may demonstrate justifiable dissatisfaction by showing that there is a "conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *United States v. Grady*, 997 F.2d 421, 424 (8th Cir. 1993) (internal quotation marks omitted).  "Whether to grant a defendant's motion to substitute counsel is a matter committed to the sound discretion of the district court[.]"  *Id.* at 423-24 (internal quotation marks omitted).

Anderson has not demonstrated that there was a complete breakdown in his communication with Dunnwald prior to sentencing or that the Court should have granted his request for new counsel.  Further, to the extent that Anderson argues that he was deprived of effective counsel because Dunnwald remained his counsel, the record shows that Dunnwald thoroughly represented Anderson's interests throughout the proceedings.  At trial, Dunnwald effectively defended Anderson through extensive cross-examination of witnesses and calling witnesses in support of the defense.  Dunnwald also filed post-trial motions for a judgment of acquittal or for a new trial, supported by relevant legal arguments.  (*See* Docket Nos. 118, 121-23.)  Dunnwald adequately represented Anderson's interests at sentencing, arguing that an enhancement for obstruction of justice was unwarranted and that Anderson should have received a three-level downward adjustment for acceptance of responsibility.  (*See, e.g.*, Docket No. 137; Sentencing Hr'g Tr., Vol. II at 35-41.)  *See United States v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002) ("The focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the accused's relationship with his attorney.").  Finally,

Dunnwald adequately represented Anderson's interests on appeal, arguing *inter alia* that the Court improperly rejected certain jury instructions; that the prosecution failed to disclose information to defendants in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963); that defendants were entitled to a new trial based on juror misconduct; and that the Court improperly admitted Heppner's CFTC testimony in violation of Anderson's Sixth Amendment Confrontation Clause rights. *See Heppner*, 519 F.3d at 748.

In short, Anderson has not established that he was denied effective assistance of counsel because he was represented by "unwanted counsel." Further, Anderson's contention that he was denied effective assistance of counsel in his effort to fire Dunnwald is without merit; Anderson does not cite and the Court is unaware of any support in the law that a defendant is guaranteed the right to counsel in assisting him or her with firing his or her present counsel. Accordingly, the Court denies Anderson's motion as premised on those claims.

## XI. CUMULATIVE PREJUDICE

Anderson's final contention is that the cumulative effect of Dunnwald's objectively unreasonable actions at trial deprived Anderson of a fair trial. As discussed above, the Court concludes that Dunnwald was not constitutionally ineffective. Dunnwald provided Anderson with comprehensive and rigorous defense, challenging critical issues at trial and further arguing important issues on direct appeal.

Anderson raises additional claims of ineffective assistance of counsel in arguing that the cumulative effect of Dunnwald's errors prejudiced him. Although Anderson's

allegations are vague, Anderson seems to allege that Dunnwald failed to properly object to the admission of evidence at trial, failed to adequately cross-examine witnesses to impeach their credibility, and failed to adequately challenge the prosecution's assertions of fact at sentencing. The Court has carefully reviewed the proceedings that Anderson cites and has reviewed the trial and sentencing transcripts. Based on that review, the Court rejects Anderson's additional arguments that Dunnwald was constitutionally ineffective.

## XII. MOTION TO AMEND AND ALLEGATIONS OF PROSECUTORIAL MISCONDUCT

On December 22, 2009, Anderson filed a "Motion to Amend 28 U.S.C. § 2255 Petition Pursuant to Rule 15(c)" of the Federal Rules of Civil Procedure. (Docket No. 230.) In a supporting brief, Anderson alleges prosecutorial misconduct, arguing (1) that the prosecution improperly expressed an opinion that Barbara Anderson did not testify truthfully at trial, (*see* Mem. in Supp. of Claim for Prosecutorial Misconduct at 2, Docket No. 231); (2) that the prosecution improperly vouched for Oliver's credibility in closing argument, (*id.* at 3-4); (3) that the prosecution solicited perjured testimony from Oliver during trial, (*id.* at 5); (4) that the prosecution failed to adequately investigate the validity of the Georgia Trust, (*id.* at 11-12); and (5) that the cumulative effect of the prosecution's errors violated Anderson's due process rights, (*id.* at 13-20).

28 U.S.C. § 2255(f) states that "[a] 1-year period of limitation shall apply to a motion under this section." The limitation period ordinarily begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). On

October 6, 2008, the Supreme Court denied Anderson's petition for certiorari, which commenced the statute of limitations. *See Anderson v. United States*, 129 S. Ct. 250 (Oct. 6, 2008). Anderson filed his § 2255 motion on October 5, 2009, one day before the statute of limitations expired. (*See* Docket No. 221.) Almost three months after filing that motion, Anderson filed the motion for leave to amend his § 2255 motion.

Federal Rule of Civil Procedure 15 states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c). Rule 15 applies where a party seeks leave to amend a petition for habeas relief. *See Ryan v. Clarke*, 387 F.3d 785, 789 (8th Cir. 2004). Given the comprehensive and far-reaching arguments advanced in his original § 2255 motion – many of which are mirrored in the proposed additional claims – the Court concludes that the proposed additional allegations arise out of the same conduct or occurrences set out in the original pleading. The Court, however, denies Anderson's § 2255 motion on the additional grounds set forth in his "Memorandum in Support of Claim for Prosecutorial Misconduct." (*See* Mem. in Supp. of Claim for Prosecutorial Misconduct, Docket No. 231.)

The Court addressed Anderson's first two arguments regarding the prosecution's statements about Barbara Anderson's credibility and improper vouching for Tim Oliver in the discussion of Anderson's original motion. As the Court noted, Anderson did not establish prosecutorial misconduct.

Anderson has also not established that he may seek relief under § 2255 for those claims or the new claims that he alleges in his "amended" memorandum. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that **could not have been raised on direct appeal** and, if uncorrected, would result in a complete miscarriage of justice." *Apfel*, 97 F.3d at 1076 (emphasis added). "A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." *Id.* In Anderson's original motion, Anderson tied his grounds for relief – i.e., prosecutorial misconduct and challenges to the Court's sentencing findings – to claims for ineffective assistance of counsel, which are cognizable under § 2255. Here, Anderson did not raise his claims about Oliver's false testimony or failure to investigate the Georgia Trust on direct appeal and he has not established cause for that procedural default.

Although Anderson may challenge the prosecution's alleged knowing use of perjured testimony by Oliver, *see Houser*, 588 F.2d at 518, Anderson does not argue cause for failing to bring that claim on direct appeal – such as the discovery of new evidence of the prosecution's alleged misconduct. *See Holt*, 303 F.2d at 793-94. Thus, Anderson may not collaterally attack his sentence on the basis of alleged prosecutorial misconduct because he has not demonstrated cause for procedural default. *See Houser*, 508 F.3d at 513-14 ("It is firmly established that [§] 2255 cannot be used as a substitute for a direct appeal from a conviction.") (citing *Taylor v. United States*, 177 F.2d 194, 195 (4th Cir. 1949) (per curiam) ("Prisoners adjudged guilty of crime should understand that

28 U.S.C.[ §] 2255 does not give them the right to try over again the cases in which they have been adjudged guilty. Questions as to the sufficiency of the evidence or involving errors either of law or of fact must be raised by timely appeal from the sentence if the petitioner desires to raise them.")). Accordingly, the Court denies Anderson's motion on the grounds alleged in his proposed amended claims.

In sum, Anderson has not established that Dunnwald's representation fell below the "range of competence demanded of attorneys in criminal cases." *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (internal quotation marks omitted). Anderson has also not established that he is entitled to relief on any other grounds advanced in his briefs, and the Court denies his motion under § 2255.

## XIII. CERTIFICATE OF APPEALABILITY

The Court may grant a Certificate of Appealability only where the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The petitioner must show that the issues are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994). For purposes of appeal under 28 U.S.C. § 2253, the Court finds that Anderson has not shown that reasonable jurists would find the issues raised in Anderson's § 2255 petition debatable, that some other court would resolve the issues differently, or that the issues deserve further proceedings. The Court therefore declines to grant a Certificate of Appealability in this case.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1.      Thomas Anderson's *Pro Se* Motion to Amend [Docket No. 230] is **GRANTED.**

2.      Anderson's *Pro Se* Motion to Vacate Under 28 U.S.C. 2255 as argued in supporting memoranda, (Docket Nos. 222, 229, 231), [Docket No. 221], and as amended, [Docket Nos. 230-31] is **DENIED**.

3.      Anderson's *Pro Se* Motion for Release on Recognizance or Surety [Docket No. 232] is **DENIED**.

4.      For the purposes of appeal, the Court does not grant a certificate of appealability.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  December 13, 2010          ___s/ *John M. Tunheim*___
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                              United States District Judge